UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**SHALENA UNDERWOOD**,                     Case No. 1:11 CV 352

           Plaintiff,                     Magistrate Judge James R. Knepp II

    v.                     MEMORANDUM OPINION AND ORDER

**COMMISSIONER OF SOCIAL SECURITY,**

           Defendant.

### INTRODUCTION

In this disability benefits case, Plaintiff Shalena Underwood claims that because the administrative law judge (ALJ) did not find she suffered from "Pain Disorder with Medical and Psychological Issues", he improperly determined Plaintiff's residual functional capacity. Even so, the ALJ did take into account all of Plaintiff's physical and mental limitations in determining her residual functional capacity, and therefore his failure to find Plaintiff suffered from a specific severe impairment does not constitute reversible error. Accordingly, the Commissioner's decision is affirmed.

### BACKGROUND

**Procedural History**

Plaintiff applied for disability insurance benefits (DIB) in October 2006, alleging a disability onset date of September 29, 2006. (Tr. 100–05). Plaintiff claimed a combination of impairments, including wrist and ankle pain, prevented her from working. (Tr. 119). Her application was denied initially and upon consideration (Tr. 79–80), so she requested a hearing before an ALJ (Tr. 94). After a hearing, the ALJ found Plaintiff was not disabled and the Appeals Council denied review.

(Tr. 1–19).  Plaintiff now seeks judicial review pursuant to 42 U.S.C. § 405(g).  The parties consented to the jurisdiction of the undersigned. (Doc. 18).

**Vocational Background**

Plaintiff was 30 years old as of the alleged onset date and 33 as of the date of the 2009 hearing.  (Tr. 17, 100).  In 2002, Plaintiff joined the U.S. Army, where she served for over three years and drove a cargo truck.  (Tr. 26).  Plaintiff was medically discharged from the Army in 2006 for service-related injuries to her pelvis and left wrist.  (Tr. 27). She did not work after leaving the military (Tr. 30), but did attend some classes at Cuyahoga Community College (Tr. 31–32).

**Medical Evidence**

In late 2006, a Veteran's Administration physician diagnosed Plaintiff with joint pain in her ankle and foot, as well as depressive disorder.  (Tr. 210).  Soon thereafter, in February 2007, Plaintiff saw Dr. Sally Felker, a consultative psychologist. (Tr. 233–36). Plaintiff told Dr. Felker she experienced tingling and numbness in her foot, had trouble walking more than a few hundred feet, and had wrist pain. (Tr. 234).  Plaintiff indicated her activities of daily living included washing and dressing herself, performing household chores, making her own meals, watching television, and reading.  (Tr. 235).  Plaintiff also admitted to visiting friends on a daily basis, attending religious services, and spending time with her cousin.  (Tr. 235).

Dr. Felker concluded Plaintiff suffered from depression and pain disorder related to both psychological and physical factors, and suffered from mild to sometimes moderate impairment in her ability to concentrate.  (Tr. 235).  Plaintiff's ability to understand and follow instructions, however, was not impaired.  (Tr. 235).  Furthermore, Dr. Felker believed Plaintiff's ability to perform routine tasks was moderately impaired due to leg and wrist pain, as well as her ability to

2

relate to work peers and supervisors, and to tolerate stressors of employment. (Tr. 236). Dr. Felker also assessed Plaintiff a Global Assessment of Functioning (GAF) score of 53. (Tr. 236).

Also in February 2007, Dr. Nancy McCarthy, a state agency reviewing psychologist, assessed Plaintiffs's mental condition. (Tr. 237–54). Dr. McCarthy concluded Plaintiff could "complete a wide range of simple and more detailed tasks in routinized settings without strict time pressures." (Tr. 253). In May 2007, Dr. Karen Staily-Steier affirmed Dr. McCarthy's assessment. (Tr. 450).

That same month, Dr. Nick Albert, a state agency reviewing physician, evaluated Plaintiff's physical condition. (Tr. 255–62). Dr. Albert noted Plaintiff had "normal sensation, neuro, muscle, reflexes, are all intact", and that Plaintiff walked with a normal gait and used no assistive devices. (Tr. 256). He believed Plaintiff could occasionally lift 50 pounds, frequently lift 25 pounds, stand or walk about six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. (Tr. 256). Dr. Albert believed Plaintiff's symptoms were "partially consistent with the medical evidence." (Tr. 260). In May 2007, Dr. Dimitri Teague, another state agency reviewing physician, affirmed Dr. Albert's assessment. (Tr. 449).

In March 2007, Kathe Cooper-Collins, P.A. and Dr. Simran Singh sent a letter stating Plaintiff was "currently unable to work due to her medical conditions." (Tr. 264). In a basic medical form, Ms. Cooper-Collins described Plaintiff's medical conditions as depression, foot pain and weakness, Raynaud's syndrome, and psoriasis. (Tr. 265).

Also in March 2007, Dr. Dariush Saghafi, a neurologist, examined Plaintiff due to complaints of wrist pain and migraine headaches. (Tr. 311–13). Dr. Saghafi summarized Plaintiff's complaints, which included pain, swelling, and numbness in her left wrist, as well as discoloration

3

of her fingers when her hand became cold.  (Tr. 311).  Upon examination, Dr. Saghafi noted no deformity, discoloration, or swelling of her left hand.  (Tr. 312).  He did, however, note the fingers on Plaintiff's left hand were detectably colder compared to those on her right.  (Tr. 312).  Dr. Saghafi noted Plaintiff's grip strength was graded at 4/5.  (Tr. 312).  He concluded that it was "less likely than not" Plaintiff suffered from Complex Regional Pain Syndrome.  (Tr. 312).

In May 2007, and again in January 2009, Dr. Monica Parker, a psychiatrist, examined Plaintiff.  (Tr. 456–61, 669–75).  Plaintiff reported she attended weekly individual and group therapy sessions to treat her depression, but had declined medications.  (Tr. 456).  Dr. Parker diagnosed Plaintiff with depression, noting it was caused by both Plaintiff's physical pain and the occupations and recreational limitations her pain has placed on her.  (Tr. 460). However, Dr. Proctor noted Plaintiff's depression "would lead to no more than mild to moderate difficulty in occupational functioning."  (Tr. 461).

### The Administrative Hearing

An administrative hearing was held in June 2009 where Plaintiff and a vocational expert both testified. (Tr. 20–55).  Plaintiff testified she was unable to work primarily because of the pain in her left ankle and left wrist. (Tr. 27–29, 37–41).  Plaintiff also testified she lives alone (Tr. 33) and her daily activities involve doing chores, watching television, and reading. (Tr. 35).  Plaintiff said she sometimes needs help with doing her laundry, which can go unattended for up to a month until Plaintiff's mother assists her. (Tr. 33–34).  Plaintiff testified she is able to cook for herself (Tr. 34), and since being discharged from the military, has traveled to both California and Arizona to see her goddaughter (Tr. 37).

Plaintiff also testified her foot and ankle pain worsens with walking or standing too long (Tr.

38) and to take pressure off her leg, has used a cane prescribed by a VA physician (Tr. 269) since March 2007(Tr. 43). Plaintiff also testified she has lower back pain. (Tr. 41). Plaintiff further testified she suffers from depression, characterized by feelings of worthlessness and uselessness. (Tr. 45).

A vocational expert (VE) also testified. He responded to questioning by the ALJ, including a hypothetical question concerning an individual who shared Plaintiff's vocational profile and was capable of performing a limited range of light work. (Tr. 49–54). The vocational expert testified the hypothetical person could perform the jobs of account clerk (85,000 jobs), food and beverage clerk (90,000 jobs), and microfilming document preparer (70,000 jobs). (Tr. 53). In response to questioning by Plaintiff's counsel, the VE testified an individual who was off task 20% of the time, or absent from work four days per month, would not be employable. (Tr. 54).

**The ALJ's Decision**

The ALJ found Plaintiff suffered from the following severe impairments: Reflex Sympathetic Dystrophy (RSD), also known as Complex Regional Pain Syndrome, of the left wrist and left ankle; osteopenia; status post fracture of the pelvis and left wrist; major depressive disorder; and migraines. (Tr. 10). Her condition, however, did not meet or medically equal a listed impairment. (Tr. 11). The ALJ found Plaintiff retained the ability to perform light work with the following limitations:

- limited to standing or walking two hours in an eight-hour workday;

- sitting six hours in an eight-hour workday;

- only occasional pushing and pulling;

- occasional climbing, balancing, and stooping;

- must avoid ladders, ropes, scaffolds, kneeling, crouching, and crawling;

5

- limited to occasional handling, fingering, and feeling with the non-dominant upper extremity;

- must avoid extreme colds and hazards;

- limited to understanding, remembering, and carrying out three to four-step instructions in a routine setting without strict time pressures; and

- can only perform jobs that allow her the use of a cane to ambulate.

(Tr. 12).  The ALJ found there were a significant number of jobs in the national economy Plaintiff could perform – including charge account clerk, food and beverage clerk, and microfilm document preparer – making her not disabled (Tr. 17).

## STANDARD OF REVIEW

In reviewing the denial of Social Security benefits, the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). "Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Besaw v. Sec'y of Health & Human Servs.*, 966 F.2d 1028, 1030 (6th Cir. 1992).  The Commissioner's findings "as to any fact if supported by substantial evidence shall be conclusive." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (citing 42 U.S.C. § 405(g)).  Even if substantial evidence or indeed a preponderance of the evidence supports a claimant's position, the court cannot overturn "so long as substantial evidence also supports the conclusion reached by the ALJ." *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 477 (6th Cir. 2003).

**STANDARD OF DISABILITY**

Eligibility for DIB is predicated on the existence of a disability.  42 U.S.C. § 423(a). "Disability" is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  20 C.F.R. § 416.905(a); *see also* 42 U.S.C. § 1382c(a)(3)(A). The Commissioner follows a five-step evaluation process – found at 20 C.F.R. §§ 404.1520 and 416.920 – to determine if a claimant is disabled:

1. Was claimant engaged in a substantial gainful activity?

2. Did claimant have a medically determinable impairment, or a combination of impairments, that is "severe," which is defined as one which substantially limits an individual's ability to perform basic work activities?

3. Does the severe impairment meet one of the listed impairments?

4. What is claimant's residual functional capacity and can claimant perform past relevant work?

5. Can claimant do any other work considering her residual functional capacity, age, education, and work experience?

Under this five-step sequential analysis, the claimant has the burden of proof in Steps One through Four. *Walters*, 127 F.3d at 529. The burden shifts to the Commissioner at Step Five to establish whether the claimant has the residual functional capacity to perform available work in the national economy.  *Id.*  The court considers the claimant's residual functional capacity, age, education, and past work experience to determine if the claimant could perform other work.  *Id.* Only if a claimant satisfies each element of the analysis, including inability to do other work, and meets the duration requirements, is he determined to be disabled. 20 C.F.R. §§ 404.1520(b)–(f) &

7

416.920(b)–(f); *see also Walters*, 127 F.3d at 529.

DISCUSSION

Plaintiff insists the ALJ erred in two ways: first by failing to specifically find Plaintiff suffers from "Pain Disorder with Medical and Psychological Issues," in addition to RSD and depression, and second by improperly evaluating Plaintiff's credibility.  (Doc. 14, at 1).  Neither argument, however, establishes error in the ALJ's determination.

**Severe Medical Impairment Finding**

Plaintiff's first argument stems from the ALJ's obligation at step two of the disability analysis to determine whether a claimant suffers from a "severe" impairment – one which substantially limits an individual's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii); *Nejat v. Comm'r of Soc. Sec.*, 359 F. App'x 574, 576–577 (6th Cir. 2009). "After an ALJ makes a finding of severity as to even one impairment, the ALJ 'must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'" *Nejat*, 359 F. App'x at 576 (quoting SSR 96-8p, 1996 SSR LEXIS 5 at, *14).

Plaintiff's complaint is not that the ALJ failed to find she suffered from a severe impairment – and indeed she could not, given the ALJ found Plaintiff suffered from the severe impairments of RSD and major depression, among others.  (Tr. 10).  The ALJ erred, Plaintiff says, because he did not specifically find she suffered from "Pain Disorder with Medical and Psychological Issues" (Doc. 14, at 14), a condition that was diagnosed by Dr. Delametre and Dr. Proctor.  (Tr. 544, 673).

But this argument does Plaintiff no good. Whatever one chooses to call Plaintiff's severe impairments at step two, it is clear that at step four the ALJ took Plaintiff's pain and mental health

8

limitations into consideration in determining her RFC. (Tr. 12–17).  "And when an ALJ considers all of a claimant's impairments in the remaining steps of the disability determination, an ALJ's failure to find additional severe impairments at step two does 'not constitute reversible error.'" *Nejat*, 359 F. App'x at 576 (quoting *Maziarz v. Sec'y of Health & Human Servs.*, 837 F.2d 240, 244 (6th Cir. 1987)).

    *Maziarz* makes this point crystal clear.  There the Secretary found the claimant suffered from the severe impairments of coronary artery disease, status post right coronary artery angioplasty, and angina pectoris.  *Maziarz*, 837 F.2d at 244.  The claimant argued the Secretary erred by not also finding his cervical condition constituted a severe impairment.  *Id.*  The Sixth Circuit stated this was not reversible error, however, because the Secretary "properly could consider claimant's cervical condition in determining whether claimant retained sufficient residual functional capacity to allow him to perform substantial gainful activity".  *Id.*

    The same is true here. The ALJ found Plaintiff suffered from severe impairments (Tr. 10); that he failed to find she suffered from an additional severe impairment does not matter because he took into account the effect Plaintiff's pain and mental impairments had on her RFC.  The ALJ addressed Plaintiff's wrist, ankle, and back pain (Tr. 12–14) as well as her depression (Tr. 15) in making the RFC determination. That determination is supported by substantial evidence and Plaintiff does not argue otherwise.  Furthermore, it is not clear what additional limitations the ALJ might have imposed upon Plaintiff's RFC by finding she suffered from Pain Disorder with Mental and Physical Issues beyond those prescribed in his opinion and Plaintiff points to none.  In short, the ALJ's consideration of the cumulative effect of Plaintiff's impairments throughout the analysis renders any error made by the ALJ harmless.  *Nejat*, 359 F. App'x at 577.

9

Plaintiff's argument that the ALJ "misread the evidence as to [her] GAF score" is similarly unpersuasive.  Plaintiff contends that because the ALJ did not reference a GAF score of 48 assigned by Dr. Proctor in January 2009, the ALJ's analysis is flawed and his conclusions wrong.  But the ALJ's failure to cite this one particular GAF score, standing alone, does not render the RFC inaccurate.  *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 241 (6th Cir. 2002).

**Plaintiff's Credibility**

Plaintiff next argues the ALJ erred by discounting Plaintiff's subjective complaints of pain. "There is no question that subjective complaints of a claimant can support a claim for disability, if there is also evidence of an underlying medical condition in the record." *Jones*, 336 F.3d at 475 (citing *Young v. Sec'y of HHS*, 925 F.2d 146, 150–51 (6th Cir. 1990)); *see also* 42 U.S.C. § 423(d)(5)(A).  However, "an ALJ  is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."  *Id.* at 476. Furthermore, "an ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility.' However, they must also be supported by substantial evidence."  *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (quoting *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997)).

While Plaintiff contends the ALJ relied only on objective medical findings in assessing Plaintiff's pain, thereby distorting his view of Plaintiff's subjective complaints of pain, that is not what the record reflects.  While it is true the ALJ noted Plaintiff's testimony about her pain was unsubstantiated by objective medical evidence, that is not the only evidence he relied upon. He also took into account Plaintiff's treatment history, activities of daily living, and Plaintiff's own

inconsistent statements. (Tr. 13–16).

For example, the ALJ noted Plaintiff had not immediately sought out treatment for her condition (Tr. 13–14) and that she had "deprioritized physical therapy when she returned to school" (Tr. 15), suggesting her symptoms were not as serious as she made them out to be.  The ALJ also observed that, although Plaintiff asserted she had difficulty using her hands, she was able to cook for herself, an activity requiring use of her hands.  (Tr. 16).  Plaintiff was also able to continue to work as a truck driver in the Army "at a physical level beyond the residual functional capacity finding" even after sustaining her injury.  (Tr. 15–16).  Plaintiff also testified she was able to travel to California and Arizona after she was discharged from the Army.  (Tr. 16, 33–36).  This evidence undermines Plaintiff's credibility and the ALJ properly relied upon it.  *See* 20 C.F.R. § 404.1529(c)(3) (listing factors ALJ may consider in evaluating claimant's credibility, including treatment received and activities of daily living); *see also* SSR 96-7p ("One strong indication of the credibility of an individual's statements is their consistency, both internally and with other information in the case record.").  The ALJ's credibility determination is supported by substantial evidence.

## CONCLUSION

For all the foregoing reasons, the Commissioner's decision is affirmed.

IT IS SO ORDERED.

                    s/James R. Knepp II
                United States Magistrate Judge

11